We'll now take our third case this morning, number 23-2064, Dimas v. Pecos Independent School District. Mr. Garcia? Hey, please record. Good morning, Your Honors. My name is Derek Garcia. I'm a staff attorney with New Mexico Legal Aid's Safety View Project. My pronouns are he, him, and his. I'm joined by my colleague Michelle Garcia, and we proudly represent your appellant this morning, DeAnza Angel Dimas, a former high school student and basketball player. Imagine a world in which state officials were free to question you about the most fundamental and intimate details of your private lives, including whom you choose to love or show romantic interest in. Imagine a world in which those same officials were able to premise your equal participation in school, the workplace, even participation serving on this honorable court or similar courts upon you successfully answering their questions, and you would have no way of ever knowing if you pleased them with your answers. You might be surprised to learn that for the lesbian, gay, bisexual, transgender, intersex, the LGBTQ plus community doesn't require any imagination. It's the world in which we live every day. First, if the court will permit me, before I stand open for questions on this case, some brief historic perspective on why the right to privacy in sexual orientation matters. Nothing less than the right to privacy in a town not too far north of here named Laramie, Wyoming, and part of this distinguished 10th circuit, a young man named Matthew Sheppard was strung up on a fence and left to die alone overlooking the blue lights of Laramie after his right to privacy was so thoroughly invaded by his kidnappers. Flash forward to 2003, five years later, when the last vestiges of criminal laws prohibiting same-sex intimacy were abolished in Lawrence versus Texas, cited in the briefs. Until 2009, 11 years after Matthew Sheppard's death for the Matthew Sheppard and James Berg Hate Crimes Act to finally become law, and another reason why cases such as these before you today affecting minority rights must find In the year 2015, the Supreme Court recognized for the first time in history same-sex marriage and the right to build a life in dignity and equality with one's same-gender romantic partner. In the year 2020, the Supreme Court said for the first time in history that LGBTQ citizens, Americans, have a right to privacy in disclosing their sexual orientations under the 14th Amendment, which brings us to the case today. So let me, I mean, are you, I'm afraid you're going to use all your time on that, and I've got two questions, one of which is I've got a concern about whether we have jurisdiction at all, because the district court never ruled on count two as to PISC, and so we've got an outstanding claim, and my second question is, all the stuff on the right of privacy, the district court denied your motion to amend that count, and you amended it anyway, and the district court dismissed it under Rule 15. Why isn't that correct? I'll take the first question, or the second question first. As we've mentioned or replied, we filed our first amendment complaint at a time it was expected. We amended and consolidated our common law tort claim for invasion of privacy under New Mexico law into one under a 14th Amendment claim, you know, but you didn't have leave to amend, and you were beyond the point where you could amend without leave. I would suggest that the court is silent in its particular language on whether or not we are granted leave to amend. No, he said you can amend that claim. He dismissed the particular claim without prejudice. It seems to me that's pretty clear. You could amend that particular claim. It wasn't open season to make any new claims you wanted. We believe that the invasion of privacy as a common law tort claim that didn't withstand a sovereign immunity test is substantively similar to a 14th Amendment claim invasion of rights of privacy under the 14th Amendment. Well, if you think so, why don't you ask permission? To do so required it at a time that we were, in our opinion, granted leave to amend the initial complaint on that claim. Federal courts are not like New Mexico state courts where it's open season to do what you want, just so you are prepared when you come to federal court again. Yes, I would agree with that, Your Honor, wholeheartedly. A Rule 15 motion specifically allowing us to, after our invasion of privacy tort claim had been dismissed, clarifying that we were allowed to amend and make a direct constitutional claim in addition to our 42 U.S.C. 1983 claim, claiming the denial of equal protection, as well as our direct statute on point under Title IX, which is well-established law, Title IX of the Federal Amendments in 1972, that basically allows us to withstand this qualified immunity challenge to our dismissal on this case. What about the jurisdictional issue raised by Judge McHugh? And let me refresh your recollection. It's count two, and the court never ruled, as far as I can tell, on the claim, the defendant, PISD, with respect to count two. So we've got an outstanding claim that was never ruled on in the district court, which means we don't have a final judgment. I believe we do have a final judgment for the purposes of a dismissal of, and I'm not recalling, the defendant sees precisely on count two if it's the First Amendment complaint or because of the multiple memorandum opinions dismissing our claims. I believe, as to the entity itself, whether or not the claims were dismissed against them, and also based upon the district court's entering of a final judgment document appearing in the appendices, I believe this court does have jurisdiction, but I would have to drill down further on that to precisely answer your question, Your Honor. But it's a very good question. We urge this court not only to declare that the law is well-established under Title IX, a federal statute directly on point, but also to clarify that under the 14th Amendment and the Lawrence, Bostock, Eisenstadt, ALA line of cases, that these are all sufficiently analogous to clarify that Americans have a well-established substantive due process right to privacy in sexual orientations and their true gender identities, and that it's no business to the state, school officials, or anybody else, especially without parental consent in this case. Well, Counsel, how do you respond on the merits to the argument that the unwritten school policy here applied equally to everyone and had the same impact upon everyone, regardless of gender or sexuality? No one, if they were a couple, was allowed to sit together. So how do you respond to that argument? We respond to that saying that's precisely why we needed to receive some amount of discovery in this case. We were denied all discovery requests. We served interrogatories, requests for production, asking the school district to demonstrate that this policy, which they claim is spatially neutral, had been applied ever before to a non-LGBTQ couple. Presumably, if that evidence existed, it would have been attached to their numerous motions for summary judgment in the case. Well, that's your burden, isn't it? I mean, you seem to be reversing the burden here. I mean, if you're making this claim, you're the one who has to show a disparate impact. It is our burden at summary judgment stage. That is correct, Your Honor. But at the same time, based on the denial of our three Rule 56D motions for additional discovery, in order to comprehensively show and conclusively show disparate impact, I think it is a denial of fundamental due process, procedural due process, not to be afforded that information. So you concede at this point you don't have evidence of disparate impact or discriminatory intent? Other than our plaintiff's own experience in this case and that of her same-sex girlfriend, we were never received. There's nothing in the record showing conclusively that this policy has ever been applied to anyone else besides LGBTQ couples. But we don't have anything conclusively demonstrating that idea. Well, you don't even have evidence that it's other gay or lesbian couples. You have one incident, your clients. That's correct, Your Honor. Under the facts of this case, it is our clients and her same-sex girlfriend that were ambiguously discriminated against. There's nothing in the record establishing that this case, excuse me, this policy, this unwritten policy, has ever been applied to a non-LGBTQ couple in any way. And when we served interrogatories, requests for production, directly asking the school district to demonstrate that it had been ever applied prior to our plaintiffs being targeted, prior to them being monitored for six months and 11 days after this policy was enforced, seemingly for the first time, we were denied all our discovery requests. Turning again to Title IX, what activities was your client prevented from participating in? First, in response to that, the statute on Title IX includes the word or, and or discrimination does not necessarily require discrimination in fact. So are you conceding that she was not denied access to any government-funded program? We are not conceding that she was denied access because we, I think it's safe to say that it's a judgment stage, especially with the facts construed in the plaintiff's favor, to assume that this policy would have prohibited her from attending the basketball tournament if she didn't concede and find a different seat. I think it's required under the sovereign judgment standard to construe those facts in our favor as non-LGBTQs. Well, we can take reasonable inferences from the facts alleged, but we can't make up facts. Right. I agree with that, Your Honor. We served an interrogatory directly to Coach Flores, asking whether or not he would allow DeAnza Demas to attend the basketball tournament if she didn't find a different seat than her same-sex girlfriend. But the court ordered that he should not respond to that question under oath. Counsel, can you also please clarify what claims you're appealing? Because your remedy is essentially reverse all district court decisions and remand it back. But several of the counts, particularly those in the original complaint, you don't address at all in your opening brief, so why aren't those waived? We were asking for a reversal of the dismissal on our Title IX claim. We're asking for a dismissal on our 42 U.S.C. 1983 claim, generally equal protection. We're asking for a dismissal of our substantive due process claim that was denied on the right to privacy, essentially. And we're asking for a reversal of the decision not to grant us any discovery prior to dismissing our complaint and denial of our two formal Rule 56D motions, as well as the original motion, or excuse me, response, which was made as part of that response. And I'd like to reserve for rebuttal time to go to some persuasive authority after that. You'll be allowed to rebut what opposing counsel says. If you have arguments you need to make, you need to do that in your opening so you don't sandbag the appellee. So if you say you have persuasive authority on this, I think you should address it now rather than... Thank you, Your Honor. I'd like to just touch briefly on the Sterling v. Burroughs and Minersville case. It appears at 232 F3D 190. It's addressed by the district court in the district court's opinion at the appendix at 625. It's a case from the year 2000. It's a Third Circuit case in which the court held that there is a clear substance of due process, rights, privacy, and sexual orientation. The case involved an 18-year-old male caught drinking underage with a 17-year-old male in a car and the arresting officer's mere threat to tell the 18-year-old's families about his true sexual orientation was enough to cause him to end his own life. The state agent's mere threat to disclose sexual orientation resulted in markedly suing and suicide. The Third Circuit declined to extend qualified immunity to the arresting officer since it had no issue concluding that the well-established right to privacy includes compelled disclosure of sexual orientation as it does here. There's a big difference. One is a state officer saying, I'm going to disclose. What your client's complaining about is she has to disclose. Do you see that as a difference in terms of state action? I think the disclosure was made by the state officer in the Sterling case. It's the same as it was here. Coach Flores took our client, and I see my time is up, if I may be permitted to finish answering, took our client to the gymnasium, required several other witnesses to be there, other student witnesses presumably, required these people to be present while he recorded his interrogation in violation of the parent's right to be informed of consent before questioning on these highly personal matters. So I think the two disclosures were completely outside of the control of both Marcus Wayman in the Sterling case as well as DeAnza Demas in this case. Thank you, counsel. Your time has expired. Oh, yeah, sure. I have one more question. In ruling on your privacy claims, the district court ruled that your client had not established the existence of a policy, practice, or custom of invasive inquiries into students' relationship statuses, sexual orientation, or gender identities. And you did not respond to that basis for the court ruling against you on that claim in your brief. Doesn't that mean we have to affirm? I don't think it does, Your Honor, because I think we actually needed discovery in order to substantively respond to those. It's a simple matter of arguing without any kind of evidence or ability to scrutinize exactly how to respond to those claims. But our hands were tied. We weren't granted any discovery prior to the qualified immunity dismissal. Thank you. Thank you. Good morning, Honorable Judges Hartz, McHugh, and Federico. My name is Carlos Quinones. I represent the defendants in this matter, Michael Flores, Fred Trujillo, and the Board of Education for Bancos Independente School District. I'd like to begin with the district court's rulings on 56D. Plaintiff was denied discovery because plaintiff failed to comply with the rule. She made three separate requests. The first one was within a response to a dispositive motion that district court correctly ruled, well, Rule 56D is an alternative to filing a response, and you waive that when you file a response. One of the things that opposing counsel just said was that they had no opportunity to conduct any discovery before the court dismissed, I guess, ruled on summary judgment. Is that accurate? Yes, Judge, and that's why we have Rule 56D. It's a method where a party can submit an affidavit by counsel asking what discovery is needed specifically to rebut the summary judgment motion, and 56D, I think, for practicing attorneys, there's three rules. Be very specific on what you ask for in your affidavit. Second, link what you see to what you need to contest summary judgment, and I think the most important rule, don't ask for too much. I mean, yet this is exactly what plaintiff and her legal counsel did. They asked for defendant Throdis and written discovery. Some of this is noted in the record, his work history for 10 years, past litigation history, personal beliefs on bus separation, personal beliefs on students, LGBTQ, his sexual orientation, his interactions with LGBTQ students, and also asked for requests for productions, social media, text messages, transcriptions, recordings, and then that wasn't all. Asked defendant PSD for rationales for the policy, how Throdis became aware of the policy, and all of this. Well, those last ones seem relevant. It may be, Judge, but again, Rule 56D and the case law on it in this circuit says you have to be specific, you have to link, you have to follow Rule 56D, and I'll give you an example of speaking off the cuff. A lot of what's happened here is that they were not able to come forward with evidence to support their claims, and their claims got thrown out on motion for summary judgment, but they don't control the evidence. For example, on the question about Title IX, would he have refused to let her participate in the basketball game if she had refused to change seats? I mean, apparently that interrogatory was propounded, but not permitted. And Judge, I think the district court said it was a plethora of discovery requests, and that was the problem with plaintiff's Rule 56D affidavit. The other thing I want to point out, very important. So, I'm understanding your position. If your 56D motion requests a lot of stuff, some of which might be relevant to responding to the summary judgment motion, but if it's swamped by a lot of other stuff, then the judge can deny all discovery? I think so, Judge. And again, it's not the district court's job. Is there authority for that? I agree with that, Judge. It's not the district court's job to sift through all of these expansive, all-encompassing discovery requests and say, okay, I'm going to give you one, two, and three. That's counsel's job. Actually, I think when you have people getting a discovery dispute with your opponent in a litigation matter, that's exactly what happens. They do a motion to compel, and you engage, and either the magistrate or the district court judge has to go request by request and say, yep, no, yep, no. I mean, that's my experience in 22 years of practice. Yes, and a motion to compel, which was never brought in this case, we would say it's distinctive from a Rule 56D request for discovery. Again, a summary judgment motion had been filed, so the remedy is go under Rule 56D. And here you have qualified immunity lurking in the shadows for defendants Flores and Trujillo. As we all know, qualified immunity is going to protect public officials and their discretionary official actions, and also lift and ease some of the burdens associated with litigation, including discovery. I want to get back to the sifting, because it does seem like there's sifting here. I didn't see in the briefs any authority that the judge doesn't have to allow discovery on something that is relevant. How did the district court respond here? Did the district court say, this isn't relevant, this isn't relevant, this might be relevant, but it doesn't help with qualified immunity, so you're going to lose anyway? Did the judge just say, denied? Or did the judge just rule on the summary judgment motion without responding to the Rule 56? No, the judge analyzed it, Judge Hartz, very well. And again, she said, here are the guidelines or the guideposts for Rule 56D. Link what you're seeking specifically to what you're going to put in your response brief, and then the judge would allow it. And again, an example of this, I'm going to give you an example. What if plaintiff had said, Judge, we wanted to oppose Mr. Florida's very limited deposition. Here's three or four subject areas we're going to want to inquire about, and we'll even limit it to four hours or less. Now, what if the district court had been opposed to that kind of Rule 56D affidavit? Would it have been granted? I don't know. In Rule 56D, the standard is it's in the discretion of the district court on whether or not to grant it. So again, we don't think there was any abuse of discretion for this court on review. Did the district court say anything about, you need to revise your motion, and then I'll consider it. You didn't do these things that are required. If you think you need some discovery before you can respond, you're going to have to do a much better job of pointing out to me why you need this. And be mindful, Judge Hartz, this Rule 56D discovery was denied on three occasions. So maybe after the first time, why didn't Plaintiff's Counsel do narrowly tailored discovery requests and affidavit? What do you mean by you say it was denied on three occasions? Were there three separate Rule 56D motions? The first motion was encompassed within a response brief to the motion for judgment on the pleadings under Rule 126, the first dispositive motion, so to speak. And the other two were made separately in lieu of responding to the two subsequent dispositive motions. So Plaintiff... Dispositive motions on summary judgment or on the pleadings? The first one was on the pleadings. Dispositive motions two and three were under Rule 56, summary judgment. So there was one that was... So the second one was denied, and then a third was filed, and that was denied also. So Plaintiff had another bite of the apple, is my point, Judge? Well, there's a point in which... They had the opportunity to go back and say, okay, Judge, you're right. We just want to narrowly tailor it to these three or four... So they had been given... And that's it. So Plaintiff had been given an opportunity to do it right. We believe so, Judge. And, again, you have to also show in Rule 56D why you couldn't get what you need on your own, so to speak. Why wasn't Plaintiff submit an affidavit by Plaintiff on the summary judgment stage? Why not an affidavit from her mother who attended one of these meetings with school officials? Why not an affidavit from other students at Beckwith High School saying, hey, we were treated differently? Why not an affidavit from some of these coaches, the softball coach and the assistant girls basketball coach? I mean, there's just a complete absence of competent evidence on the part of Plaintiff in contesting the dispositive motions. Let me turn to the merits of the dispositive motions, starting with the Title IX claim. Two of the four necessary elements for Title IX are the harassment has to be severe and pervasive. Plaintiff did not meet that threshold. And also, as Judge McHugh noted, they have to show they were deprived of educational benefits or opportunities provided by the school. Now, again, there are certain undisputed facts that Plaintiff cannot escape, and the genuine material facts in this case were largely undisputed. First, this was a one-time incident, January 4, 2019, and that was it. So that undercuts the element of being severe and pervasive. And so there was only one instance where Plaintiff was separated from her same-sex partner on the bus before an athletic trip. The other undisputed fact is there's no evidence Plaintiff was denied any educational benefits or opportunities. She finished the girls' basketball season. She was an 18-year-old senior, participated in softball, and graduated from Beckwith High School in May of 2019. And then, again, in her brief, and again, we're at summary judgment. As this court's aware, you can't rely on your general allegations for the pleadings. You have to present competent evidence of some sort. And Plaintiff did not do so. So again, Title IX was, we think, undercut by not meeting these essential elements. And on the judgment of the pleadings, the individual defendants were dismissed from the jury. You cannot bring a Title IX claim against individuals. The other thing is, in your question, Judge McHugh, on that jurisdiction, and maybe it could have been worded a little better in some of these memorandum opinions and orders, but I believe the district court did address count two of the substantive due process claim, the equal protection claims. And then I was just looking at the final judgment. But not as to the institutional defendant, the school district. Yes, and then we're faced with the actual judgment that was filed a year ago today, March 20th, where the judge dismissed all claims that were brought by plaintiffs. So again, it's our view that all of the claims were disposed of by the district court, and that this honorable court has jurisdiction over all the claims. The other thing I want to point out is that we just implicitly decide that the court must have intended, because the basis that it decides the claim as to the individual defendants isn't available to the school district. So we can't assume that it meant to include it in its decision on that claim. Can we? Well, I think we can. And you're right, Judge. Qualified immunity was the basis for dismissing defendants Flores and Trujillo. So you can't, qualified immunity cannot be the basis to dismiss the school district, and the court never engaged beyond the qualified immunity analysis on that claim. Yeah, we agree, Judge. Qualified immunity doesn't apply to government agencies. But we do believe the judge did go into substantive due process in count two. She found it was denied because there was no deprivation of a protected interest and nothing that shocks the conscience. And again, there's been no evidence presented that would meet this very high standard of outrageous conduct. But the district court has to dispose of all the claims. So you're mentioning some. Let me ask you, what should we do if there's an outstanding claim that we don't feel was addressed by the district court? What would you want to do? Again, we're hoping you don't make that determination. But if you do, I would suppose the only remaining claim would be count two against only the Board of Education. Well, we can't rule on anything if we don't have jurisdiction. Right? A temporary, limited remand to rule? We've done that before. This isn't the first case like this we've encountered. Yeah, well, we're hoping this court decides it does have jurisdiction over the entire claim. And again, we think it does. And the judge has all claims as well. Well, if we disagree with you on that, is there anything we need to worry about in abating the appeal and remanding for a determination on that issue? Does that cause any problems? Practical problems that we should know about? Well, from a practical standpoint, perhaps not. And Judge Riggs would have to undertake that inquiry and perhaps address it. We think we fully briefed it, count two as far as the claims against the school district. So we believe it certainly was fully briefed. I mean, that's not the issue. I understand. The issue is whether we have any power to decide this case at all, which we only have power to review final judgments, which requires a decision on all claims in the district court. So it's technical, but it ties our hands. No, I understand the technicality, Judge, and appreciate it. Again, I think all of us saw the judgment dismissing all claims with prejudice dated March 20th of last year. And we maybe should not have assumed all claims were decided. We think it was. Again, the judge... The oversight, though, is not an uncommon one. Normally, if you dispose of the claims against the individual officials, employees, then the municipality is dismissed also. But it's often overlooked that a qualified immunity judgment in favor of the individuals does not free the municipality of liability. That's one reason why we might think that this really wasn't addressed yet by the district court. All right. I'm going to say my time is up. We certainly hope this court decides otherwise. We'd like to conclude by respectfully requesting the court affirm the district court in all respects. Thank you. Thank you. No, Mr. Garcia used up all his time, but I'm going to give you a minute if you want to respond to anything. Thank you, Your Honor. Just briefly to address that we have Neanza Angel, personal and private medical records available for the court appearing in our sealed pleading in Doc 38-2. If I may approach, one of my time has expired, to provide copies of these, along with the Sterling case mentioned before. Are they in the record? Yes, they are. They were filed as sealed pleadings. Then we don't need to... We do not need copies? We've got... They're not sealed from our view. Understood, Your Honor. I assume you want to maintain the seal on those documents on appeal because they have personal medical information. Yes. By all means, Your Honor. That's why we did not include them in our appendices. Would you say that... They're sealed in the district court record? They're not part of the appellate record? That's correct. They're sealed in the district court records, but not appearing in the appendices, which is why I hadn't printed and brought them today. Well, you can request that if you want. You've got a steep hill to climb to get us to allow you to supplement the record at this stage of the proceedings. If you're going to rely on them in your briefing, or at this time, you need to let the opposing party know that that's an issue. So, well, your time has expired. If you want us to consider that, you should file an appropriate pleading. But don't count on our granting it. Thank you, Your Honor. Thank you. Why don't we take a short break? Ten minutes should probably be enough. Thank you. Oh, this case is submitted and counsel are excused.